## Case No. 2,480.

CARTER v. TREADWELL et al.

[3 Story, 25.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1843.

EQUITY JURISDICTION — SUIT BY FOREIGN ADMINISTRATOR—CITIZENSHIP — PLEADING — BILL TO CANCEL AGREEMENT — MULTIFARIOUSNESS—PARTIES.

1. Where a bill was·brought by the plaintiff as administrator, and the defendant pleaded, that he was not administrator. inasmuch as he had not taken out administration in New Hampshire before filing this bill—it was *held*, that the plea was sufficient on general principles, and also that the statute of New Hampshire in relation to actions commenced by persons acting as administrators did not govern the rule of this court in equity, but was confined to suits at law, and was addressed only to the state courts.

[Cited in Pulliam v. Pulliam, 10 Fed. 30.]

2. *Held*, also, that the plaintiff might maintain a suit in the circuit court as a citizen of Maine, in his character of administrator, if he took out letters of administration in New Hampshire.

3. Certain timber land was purchased by A. of X. and Z.. A. agreeing to pay therefor at the rate of one dollar per thousand feet for all the good pine timber. to be ascertained by certain persons appointed by all parties, who were accordingly appointed, and made the estimate. A. subsequently conveyed a portion to D., D. agreeing with X. and Z. to pay therefor one fourth of the price in money and ·the remainder in notes, and they giving a bond to convey to him the land on full payment of the notes. D. died insolvent, and A. became his administrator, and agreed with X. and Z. in his behalf to surrender the bond for the notes. which was done. The present bill was afterward brought·by A. as administrator of D., and charged that there was a gross error in the original appraisement, unknown to him, (A.), by which D. had been induced to make the said bargain. and prayed that the bargain should be set aside, and the purchase money paid by D. should be refunded. But A. made no personal claim for relief. It was *held*, 1st, that the bill was objectionable for multifariousness in mixing up the independent claims which A. had personally and which he had as administrator. 2d, that it set forth no case for cancelling the original agreement. 3d, that even if it had. it was too defective and loose to support such a claim, iñ not bringing the proper parties before the court, and in aleging a mere mistake. without fraud, as a ground of relief, which, under the circumstances, was not sufficient.

This was a bill in equity in the following terms:

"Ezra Carter, Junior, of Portland.· in the county of Cumberland, state of Maine, and a citizen of the state of Maine, for himself and also in his capacity of administrator of the goods, chattels, and estate of Seth R. Adams, late of Portland. aforesaid. and at the time of his decease a citizen of said state of Maine—to which capacity of administrator. your orator was duly appointed on the twenty-first day of November, A. D. 1837, and thereafterwards was duly qualified to act accordingly, brings this his bill against Daniel H. Treadwell of Portsmouth, in the county of Rockingham, state of New Hampshire, merchant, and a citizen of the state of New Hampshire, and Alfred W. Haven, of said Portsmouth, merchant, and a citizen of the state of New Hampshire. And thereupon your orator, complaining, says that on the tenth day of June, in the year of our Lord one thousand eight hundred and thirty-five, said Treadwell. and Haven, and one Henry L. Wiggin, were the owners. or claimed to be the owners. of seventeen thirty-second parts of township numbered four in the sixth range of townships west of the Kennebec river, in the million acres, so called, in the state of Maine, excepting lands

---

[1] [Reported by William W. Story, Esq.]

reserved for the public uses—in the following proportions, to wit, the said Treadwell and Wiggin of seven thirty-second parts each, and the said Haven of three thirty-second parts,—and being such owners, or claiming to be, the said Treadwell, Haven and Wiggin, on the same tenth day of June, executed an indenture of agreement between themselves of the one part, and said Ezra Carter, Jr., of the other part, which said indenture was also executed by the said Carter, and was in the words and figures following, to wit: 'This indenture, made June 10, 1835, between Daniel H. Treadwell, Alfred W. Haven, and Henry L. Wiggin, on the one part, and Ezra Carter, Jr. witnesseth—that said parties of the first part, have agreed to sell to said Carter part of township No. four, in the sixth range, west of the Kennebec river, in the million acres, excepting public lands. viz. the said Treadwell to convey seven thirty-second parts, and the said Haven three thirty-second parts, and the said Wiggin seven thirty-second parts, and to procure a sufficient deed from the owners of the remainder, at the rate of one dollar per thousand feet, for all the good merchantable pine timber thereon, to be ascertained by the report of five good judges, to be agreed upon by the parties; or if they cannot agree, to be appointed by Daniel Eastman, Jr. and Phineas Eastman, of Lovell, who in that case are to be two of the judges, if they will agree to it. Said judges to be appointed within two weeks, to go on as soon as may be convenient, and estimate the amount of timber and make their report; and the parties of the first part agree that upon failure to convey each the part owned by him upon performance of the conditions to be performed by said Carter, they will each, so failing, forfeit and pay to said Carter such proportion of fifty-five thousand dollars as his part is of the whole of said tract. And if they shall not within a month produce good bonds from the owners of the remainder as above, they will forfeit and pay to said Carter one thousand dollars jointly. And the said Carter agrees to pay to the parties of the first part so much as said tract shall amount to, according to the report of said judges, viz.—Five thousand dollars down, and enough with said five thousand dollars to make up one fourth part of the whole within six months, and the remainder in three equal annual payments, with interest annually thereafter; interest to commence in two weeks after said Carter shall receive a copy of the report of said judges; and said Carter is within six months to procure and deliver to said parties of the first part, good notes for the three last payments, with a mortgage of the premises, or other satisfactory security; and the said Carter agrees that he will, within one week, procure and deliver at the Cumberland House in Portland, or at said Treadwell's house in Portsmouth, a bond with good sureties to make the abovemen-

tioned payments in the above described manner, and deliver the notes and security as above. The obligors to forfeit and pay to the obligees fifty-five thousand dollars on failure to perform the conditions thereof. And the said Carter is to forfeit the five thousand dollars, if he shall not procure and deliver said bond, as above. The expense of exploring and estimating the timber, to be paid equally by the parties of each part. The deeds to be given by the parties to be warrantee deeds. It is agreed to extend the time for appointing the appraisers to one month. If the said obligors shall upon failure of performance pay the fifty-five thousand dollars, the parties of the first part are to pay back to said Carter, the five thousand dollars paid by him. D. H. Treadwell, A. W. Haven, Henry L. Wiggin, Ezra Carter, Jr.'

"And on the same day the said Treadwell, by writing on the back of said bond, acknowledged the receipt of the five thousand dollars therein contemplated, in part execution of said indenture, in the words and figures following, viz.—'June 19, 1835. Received five thousand dollars, the first payment abovementioned. D. H. Treadwell.'

"And afterwards, to wit, on the seventeenth day of June, A. D. 1835, in furtherance of said indenture of agreement, a bond was executed and delivered to the said Treadwell, Haven and Wiggin, agreeably to the provisions of said indenture, signed, as your orator now recollects, is informed, and verily believes, and executed, by said Carter, Ebenezer H. Scribner, Asa Hanson, Joseph Spaulding, George Pierce, Seth R. Adams, above named, and Nathaniel S. Littlefield, all citizens of said state of Maine; and the receipt of said bond was acknowledged in writing by said Treadwell, according to the recollection, information, and belief of your orator, on said indenture, in the words and figures following, to wit,—'Portland, June 17, 1835. Received a bond agreeable to the import of the foregoing obligation. D. H. Treadwell.'

"And on the same seventeenth day of June, A. D. 1835, your orator, acting for himself, by his writing, under his hand and seal, either upon said indenture or a copy thereof, as your orator now recollects, is informed and believes, made and executed a transfer and assignment of a part of his interest therein, as follows, viz. 'Know all men by these presents, that I, Ezra Carter, Junior, mentioned in the foregoing contract, for the consideration hereinafter mentioned, and a valuable sum of money to me paid by Ebenezer H. Scribner, and Asa Hanson of Portland aforesaid, Joseph Spaulding of Caritunk in the county of Somerset, George Pierce of Harrison, Seth R. Adams of Windham, and Nathaniel S. Littlefield of Bridgton, in the county of Cumberland, do hereby bargain, sell, transfer, and assign unto them eleven sixteenth parts of the foregoing con-

tract, subject to the performance of the same proportions of the conditions thereof. To have and to hold the same, with all the privileges thereof, and appurtenances to the same belonging, and subject to all the terms, conditions, and agreements therein contained, in the following proportions, viz. Two sixteenths each to said Scribner, Spaulding, Pierce, Hanson, and Littlefield, and one sixteenth to said Adams. In witness whereof I have hereunto set my hand and seal this seventeenth day of June, A. D. 1835. Ezra Carter, Jr.'

"And by his further writing on the same, your orator acknowledged as follows, viz.— 'June 17, 1835. I acknowledge to have received of the several persons mentioned in the above assignment, their several proportions of the foregoing sum of five thousand dollars, paid by me to the said Treadwell, Haven and Wiggin. Ezra Carter, Jr.'

"And afterwards, to wit, on the twentieth day of said June, the original parties to said indenture, in further and proper execution of the intentions and requirements thereof, made this agreement and signed the same, in writing, on the back of said indenture, or a copy thereof, as follows, to wit,— 'We the above named Daniel H. Treadwell, Alfred W. Haven, Henry L. Wiggin, and Ezra Carter, Jr. do hereby appoint Phineas Eastman, and Daniel Eastman, Jr. of Lovell, David Bradley, of Fryeburg, and George W. King, of Portland, and Winthrop Smart, of Ossipee, in the state of New Hampshire, the foregoing named judges, and in case of the refusal or inability of either of said persons to perform the duties assigned them, then we agree that said Phineas Eastman and Daniel Eastman, Jr. shall fill all vacancies; and that said judges shall make duplicate reports to each of the parties as soon as convenient. And a report of the majority shall be final and conclusive upon both parties. Dated June 20, 1835. D. H. Treadwell, A. W. Haven, Henry L. Wiggin, Ezra Carter, Jr.'

"That said Haven and Treadwell did thereafter transmit a copy of said indenture and agreement last above cited, to said Phineas and Daniel, in a letter by them, said Treadwell and Haven, respectively signed, requesting and enjoining upon said Phineas and Daniel the performance of said trust, in the words and figures following, to wit: 'Portsmouth, July 6, 1835. Messrs. Phineas and Daniel Eastman, Jr.: Gentlemen,—You will perceive by the above copy of a contract made with Mr. Ezra Carter, Jr., of Portland, that you are appointed to be two of the judges of the timber on No. 4. We hope that you will accept the appointment, and we wish you to notify Messrs. King, Bradley and Smart of their appointment immediately. We are desirous to have you commence on the duty as soon as may be convenient to you. Respectfully yours, D. H. Treadwell, A. W. Haven.'

"That said Daniel Eastman, Junior, Phineas Eastman, and George W. King, thereafter declined acting as judges, pursuant to said indenture, and thereupon said Daniel Eastman, Jr., and Phineas Eastman, by the authority vested in them as aforesaid for that purpose, appointed to fill said vacancies Andrew Killgore, Thomas Farrington, and James Eastman. And the said judges, in the months of July and August of the year last aforesaid, proceeded to examine said land and to estimate the amount of timber thereon, and a majority of said judges, to wit, the said Killgore, Farrington, and James Eastman, agreed to report, and did report in the words and figures following, viz. 'We, David Bradley, Winthrop Smart, James Eastman. Thomas Farrington, and Andrew Killgore, the judges agreed upon and appointed to appraise, judge, fix and ascertain the number of feet of all the good merchantable pine timber on township numbered four, in the sixth range in the million acres, on the west side of the Kennebec river, in the county of Somerset, and state of Maine, and within named, exclusive of public lands, and having taken upon ourselves the burthen of said appointment, and having all given the within named Daniel H. Treadwell, Alfred W. Haven, Henry L. Wiggin, and Ezra Carter, Jr. due notice of the time and place of hearing and of proceeding to ascertain said amount of said timber, and all having heard said parties within named, and having all personally, carefully and attentively examined, explored, considered, estimated and ascertained all the good merchantable pine timber on said township, exclusive of public lands, we do award, order, report, adjudge, determine, and have ascertained there is on said township, exclusive of public lands, one hundred and ninety-five millions, eight hundred and fifty thousand feet of good merchantable pine timber. And we do further award, order, report, adjudge and determine that the expense of exploring and ascertaining said timber as aforesaid, is one thousand two hundred and seventy-four dollars and sixty-nine cents. Given under our hands this twenty-eighth day of August, A. D. 1835. Andrew Killgore, Thomas Farrington, James Eastman.'

"And your orator further complaining says, that after said report was made, Ebenezer Scribner, as your orator has been informed and believes, went to Portsmouth to see said Treadwell and Haven and Wiggin, with a view of settling, or endeavoring to settle said concern; and immediately afterwards came to Portland, or Windham, or wherever said Adams, then living, was found, and then and there represented to said Adams, that he, said Scribner, was authorized by said Treadwell and Haven to offer said Adams that he might have the one-sixteenth of said township, in which he, said Adams, had become interested as aforesaid, at the rate of seven dollars and fifty cents per acre, on condition that he

would pay said Treadwell and Haven one quarter thereof in cash, in advance, instead of paying the quarter in six months, as provided in said indenture; and would give his notes for the other three quarters, as provided and agreed. And said Adams, supposing and believing that he was in law bound and obliged to purchase said land according to the report of said appraisers, and fully believing that said report was correct and true, and that said land did actually contain the amount of timber specified in said report, and also believing that said Scribner was acting in good faith, and was to purchase of said Treadwell and Haven on the same terms, then and there concluded to purchase said one-sixteenth on the terms aforesaid, and to pay therefor the sum of seven dollars and fifty cents per acre, one fourth in money, and the residue in three equal annual instalments, or payments, as aforesaid, and in fulfilment of your orator's aforesaid indenture and agreement with said Haven, Treadwell, and Wiggin. That having come to the determination aforesaid, the said Adams raised and furnished his proportion aforesaid of said purchase money, including his proportion in the five thousand dollars above named, paid to said Haven and Treadwell as aforesaid, and amounting in all to the sum of two thousand five hundred and fifty dollars, and at the same time made his three several notes for the sum of twenty-five hundred and fifty dollars each, payable to said Treadwell and Haven, in one, two, and three years, with interest annually, bearing date September 12, 1835; or gave two such notes, payable in one and two years with interest, and a note for seven hundred seventy-eight dollars and fifty cents, payable in three years with interest; and for the remainder of said third annual payment gave said Haven and Treadwell other notes or securities, as this complainant is informed and believes, amounting in all to the sum of twenty-five hundred and fifty dollars for said last annual payment, including said note of seven hundred and seventy-eight dollars and fifty cents; and all of said payments and notes were delivered to and received by said Haven and Treadwell in Portland aforesaid, on said twelfth day of September, as the complainant is informed and believes, and said Haven and Treadwell then and there gave said Adams, according to the information and belief of this complainant, an obligation executed by them in writing, in the words or substance as follows, viz. 'Know all men by these presents, that I, Daniel A. Treadwell, of Portsmouth, New Hampshire, in consideration of the sum of ten thousand two hundred dollars, have agreed to sell and convey unto Seth R. Adams, of Windham, Maine, one-sixteenth of township No. 4, sixth range west of Kennebec river, in the Bingham purchase, except public lands, being in the million

acres, lying in the county of Somerset and state of Maine, according to the survey and plan of E. Coburn, Esq. by good and sufficient warrantee deed in fee, on payment of said conditions as follows, viz.—The consideration is paid and secured as follows, viz.—One quarter part in cash, in advance, the other three quarters in one, two, and three years from the twelfth day of September, A. D. 1835, secured by certain notes signed by said Adams, with interest annually. Now on the full and complete payment of the amount aforesaid, with interest, in the proportions aforesaid, the said notes are to be void and delivered up, and this agreement to be faithfully performed, otherwise to be void and of no effect. D. H. Treadwell.'

"That the said Treadwell and Haven were jointly interested in said obligation, given to the said Adams as aforesaid, by whomsoever signed and however written, concerning all of which your orator prays that said Haven and Treadwell may be required specially to answer, and annex a copy of said obligation to their answer.

"And your orator further complaining says, that after said writings were executed, the said Adams, during his life time, paid divers large sums of money to said Treadwell and Haven, in extinguishment of said notes, still believing said land to be timbered as said judges had reported, and that he was bound in law to complete the purchase of the same accordingly—being ignorant of any mistake or error in the estimate by them made—and advanced sundry other sums of money in conducting operations on said land, the whole proceeds of which were, during the life time of said Adams and after his decease, received and appropriated by said Haven and Treadwell in further extinguishment of said notes, amounting in all, as this orator is informed and believes, including said advance payments, to seven thousand two hundred and twenty-three dollars twenty-one cents, exclusive of interest on such payments, since the same were respectively made: from which payments your orator believes should in equity, and assents to be deducted so much of the payments derived from said operations on said land, as were conducted by said Adams, over and above the actual advances in money therefor made by said Adams, of which sums your orator prays that the said Haven and Treadwell may be required specifically to answer.

"And your orator further complaining saith, that some time after the decease of said Adams, to wit, in the winter of 1840, as your orator is informed and believes, said Treadwell and Haven, together with other parties interested in said lands, and without the participation, concurrence, or knowledge of your orator, or of said Adams, or of any person acting in behalf of or representing said Adams, or his estate, he being then deceased, had certain proceedings for partitioning the

several parts of said land held in common by said Treadwell and Haven and others; and caused the same to be examined, explored and surveyed anew by commissioners duly authorized for that purpose. and by others, which occasioned the suspicion and belief that there had been a gross mistake and error on the part of the judges before named, in their estimate and report of the quantity of timber on said township, and that all parties had acted under a mutual mistake in the bargain and purchase predicated upon said estimate and report. That said suspicion and belief led to a subsequent careful inquiry and examination of the fact thus suspected and believed by purchasers of parts of said township under the indenture and bargain aforesaid, as this complainant has been informed and believes. who charged upon and notified said Treadwell and Haven of said gross error and mistake on the part of said judges, committed as aforesaid, and that said Treadwell and Haven did thereafter become satisfied and convinced of the same, and upon certain proceedings instituted in this honorable court by said other purchasers under said indenture, did subsequently consent to, and did in fact rescind said bargain and purchase, and refunded the money and other property received by and paid to them, by such other purchasers, for their respective portions of said township, to the satisfaction of said other purchasers. And your orator distinctly charges upon said Treadwell and Haven, upon the information and belief of this complainant, that there was a gross error and mistake on the part of said judges, in their estimate and report of the amount of timber on said township; that in said estimate and report, said judges included, either through design or accident, a vast quantity of timber that was neither good nor merchantable, and did not come within the meaning of the indenture aforesaid; and also a vast amount of timber that did not belong to, nor stand upon said township; that there never was, in fact upon said township, and was not at the time of the appraisement, estimate and report aforesaid, any thing like the amount of nine thousand feet of timber to the acre, of all kinds; nor so much as one half that amount of good merchantable timber; nor, in fact, more than two thousand feet of such timber to the acre;—that the purchase by said Adams under your orator's aforesaid indenture with said Treadwell and Haven, was predicated entirely upon said estimate and report of said judges; said Adams having no other means of learning any thing of the amount of timber on said land; —that the whole purchase was founded on an entire mistake and misapprehension of your orator and of said Adams, and also of said Haven and Treadwell, as your orator distinctly avers, if said Treadwell and Haven did not know the truth respecting the amount of timber then actually upon said township, or have reason to suspect and believe that

said estimate and report of said judges were entirely wrong, and much beyond the truth, which your orator prays may be distinctly answered by said Treadwell and Haven;—that said one-sixteenth part of said township, purchased as aforesaid by said Adams, was never worth one half of the amount said Adams paid for the same, per acre; that said Adams was most grossly and grievously deceived and led astray by said estimate and report of said judges, founded as it was on a wrong mode of estimating the amount of timber, and on an entire mistake and misapprehension of all parties to it, and of his obligation to purchase the same under your orator.

"And your orator further charges that, as he is informed and believes, said Adams was grossly deceived and misled by said Scribner in the representations made by him as to the rate at which said Treadwell and Haven were willing to sell their interest in said township;—your orator believes that in fact said Treadwell and Haven were willing, proposed and agreed, to sell their said interest at the rate of seven dollars per acre, and did in fact sell a portion of said township to said Scribner, at that rate, while the said Adams supposed that said Scribner was purchasing at the same rate with himself and the other purchasers who signed the bond of purchase as aforesaid;—and your orator charges, that said Treadwell and Haven were purposely combining and confederating with said Scribner in the premises, to conceal from said Adams the true terms and conditions upon which said Treadwell and Haven were selling said land to said Scribner, under the indenture aforesaid, and to defraud said Adams by inducing the belief aforesaid, or afterwards knew and assented thereto. And your orator is informed and believes the truth to be, that the whole of said parts of said township, specified in the indenture and obligations aforesaid, were sold for seven dollars per acre, and that the amount received of said Adams, and of said other purchasers, over that sum, on the parts by them purchased respectively, went, or was to go, to said Scribner's benefit in some way; and that to this end said Scribner, and said Treadwell and Haven were confederating together, and were mutual agents of each other, or that said Scribner was the agent of said Treadwell and Haven to induce said Adams to purchase at the rate of seven dollars fifty cents per acre, and as a compensation for his, said Scribner's services, in deceiving said Adams with said other purchasers, received his own proportion of said land at a less rate, or that said Treadwell and Haven were knowing at the time said Adams purchased of them, and paid them money and notes as aforesaid, that said Scribner had deceived said Adams in the purchase, or had good reason to suspect and believe that said Adams was deceived by said Scribner, as to the amount paid or to be paid

by said Scribner for the number of acres he purchased.

"And your orator further shows and complains unto this honorable court, that after said Adams' decease, said Treadwell and Haven preferred and presented their demands and notes against said Adams for payment, to your orator as administrator of the estate of said Adams, and the same were examined and allowed for payment by the commissioners of insolvency duly appointed to hear and examine said demands and all other claims upon said estate presented by creditors—although said Treadwell and Haven still retained absolute title to said land. And that your orator did, in ignorance of the mistake, misapprehension, and error hereinbefore set forth in relation to the amount of timber on said township, and in total ignorance of the error, made as aforesaid, by said judges of said timber, and without the means of knowing or suspecting the same, or the combination or confederacy of the said Treadwell and Haven with the said Scribner as herein before set forth, to mislead and deceive said Adams respecting the terms upon which said parts of said township were being sold by said Haven and Treadwell, and that the same were being sold in part to said Scribner at a less price than seven dollars and a half per acre; and being ignorant of the information and knowledge which the other part purchasers of said township had obtained in partitioning the same, respecting the error, mistake and misapprehension aforesaid, and that not one half of the timber reputed by said judges to be on said township was to be found in fact thereon; and being ignorant of said Haven and Treadwell's discovery and knowledge of said error, mistake and misapprehension, and that in good faith and justice, said purchase, made as aforesaid by said Adams of said Treadwell and Haven, was void, and ought not to be enforced, and the notes by him given ought to be surrendered and cancelled; and knowing the inability of said Adams' estate to pay the remaining unpaid amount of said notes and consummate said purchase, your orator did, in his capacity aforesaid, as administrator of said Adams' estate, at the desire and request of said Treadwell and Haven, surrender to them through their attorney, the aforesaid bond, given by them to said Adams as aforesaid, for a conveyance of the land aforesaid, in consideration that the surrender of the notes held as aforesaid by said Treadwell and Haven against the estate of said Adams should be made by said Treadwell and Haven, which surrender was made accordingly, and all of said Treadwell and Haven's demand aforesaid was transferred and made over by an order or assignment in favor of the widow of said Adams. And your orator further avers, that the only claim which was then known to your orator as existing in favor of said Adams' estate,

and embraced in and by said settlement, against said Treadwell and Haven, was supposed and understood only to be a claim at common law upon the bond aforesaid, conditioned upon the payment of the notes aforesaid, and the same was in that manner adjusted, surrendered and cancelled, to wit, at Portland aforesaid, on the eighth day of August, A. D. 1840—and a written discharge executed accordingly by your orator, to said Treadwell and Haven, a copy of which your orator prays may be annexed to said Treadwell and Haven's answer to this bill.

"That after said settlement last aforesaid, by this complainant, with said Haven and Treadwell, to wit, within the year next ensuing, your orator was for the first time informed and persuaded of the error, mistake, and misapprehension herein before described, respecting the report of said judges of the amount of timber on said land, and of said Treadwell and Haven, and of said Adams, and of the fraudulent acts and collusion towards said Adams by said Scribner and said Treadwell and Haven, as herein before set forth, and believing, as he now distinctly charges upon said Treadwell and Haven, that, at the time of the settlement aforesaid, and the surrender of said bond to said Treadwell and Haven by this complainant, and the assignment of said notes, the said Treadwell and Haven well knew, and believed, and improperly and against good faith and fair dealing designedly concealed from your orator, to induce and effect said settlement, all the aforesaid facts and circumstances of the error and mistake committed by the said judges in their aforesaid report respecting the amount of timber on said township, and upon which said Adams' purchase and bond and notes and payment of money, aforesaid, had been made; that they also well knew, and believed, and improperly concealed from this complainant, that said Adams had been misled and deceived by the same; and that he had been misled and deceived as herein before stated, by the said Scribner, and that it was wrong, and improper, and against good faith and fair dealing, for this complainant, acting in his aforesaid capacity of administrator of said Adams' estate, to surrender said bond, and cancel the claim incident thereto, and founded in the circumstances in which said bond originated, in favor of said estate, and lawful creditors and representatives of the said Adams, against said Treadwell and Haven, and that this complainant never could have been justified in so doing, had he been possessed of the knowledge of said error, mistake, collusion and deception aforesaid; and that this complainant, as administrator aforesaid, was ignorant of the equity of the claim of said estate against said Treadwell and Haven; and that said Treadwell and Haven did, in said settlement, and acting upon their knowledge of the error,

mistake and worthlessness of the land aforesaid, and upon this complainant's ignorance of the discoveries which had been made by said Treadwell and Haven and the other part-purchasers of said land with said Adams, in relation thereto, practice an undue, unwarrantable and unconscionable advantage upon this complainant, and as administrator, in said settlement, and that the same ought to be re-opened, and re-adjusted, which he prays may be done. And your orator, in view of all the facts herein before stated, being advised that said purchase made by the said Adams as aforesaid, ought not to have been enforced, but that the same should have been rescinded—and that the settlement of the above described bond and notes, made by this complainant as aforesaid with said Treadwell and Haven on the 8th day of August, A. D. 1840, ought to be rescinded and nullified, and said parties be restored to their respective rights as the same existed prior to and at the time of said settlement, have requested the said Treadwell and Haven to rescind the same, and to pay back to your orator all the money so as aforesaid paid by said Adams to said Treadwell and Haven for said land, and that said notes be restored and cancelled, and that the estate of said Adams be indemnified by said Treadwell and Haven for the use or interest of the money paid them as aforesaid from the times of the payment thereof. And your orator well hoped that said defendants would have complied with such reasonable request, but they have refused so to do."

The bill, after putting several interrogatories, concluded with a prayer that, "upon a full and perfect hearing and discovery, and understanding of all matters aforesaid, all the cash so aforesaid paid by the said Adams may be refunded, with interest, and that the notes aforesaid may be given up to be cancelled, and that your orator may be repaid the expenses and damages which he and said Adams may have suffered by reason of the premises, and that your orator, for himself, and in his said capacity of administrator, may have such other and further relief in the premises as the circumstances of the case may require, and to your honors may seem meet."

The defendants put in a plea to that part of the bill which respected the claim as administrator of Adams, and a demurrer to the residue of the bill. The plea was as follows: "And now the said defendants by protestation, not confessing all or any of the matters and things in the said complainant's bill contained to be true, in manner and form as the same are therein and thereby alleged and set forth, and denying all, and all manner of fraud, fraudulent combination and conspiracy, contrivance and concealment, as therein charged, to the matter therein contained, and to so much thereof as sets forth, that said Ezra Carter, Junior, is the administrator of

the estate of said Seth R. Adams, and to so much thereof as relates to any contract of purchase between said Adams and these defendants and seeks to have such contract rescinded, and prays for relief in the premises, and that these defendants may be required to refund to said Carter all the money paid by said Adams upon the said purchase, and that the notes given in payment therefor, may be given up to be cancelled, and that the complainant may be repaid all damages and expenses which said Adams may have suffered by reason of the premises, do thereunto plead, and for plea say, that said Carter is not administrator in the bill mentioned, or the legal representative of said Seth R. Adams, duly appointed and qualified to act as therein set forth. All which matters and things these defendants aver to be true, and plead the same to so much of said bill as aforesaid, and pray the judgment of this honorable court whether they ought to be required to make any other or further answer thereunto."

The demurrer was as follows: "These defendants by protestation, not confessing all or any of the matters and things in the said complainant's bill contained, to be true, in such manner and form as the same are therein set forth and alleged, and denying all, and all manner of fraud, fraudulent combination and confederacy therein charged, and in no sort waiving the benefit of their plea filed herewith, but wholly relying and insisting thereon to so much of said bill as therein set forth, do demur to the residue of said bill, and for cause of demurrer show that the complainant has not thereby made such a case as entitles him, in a court of equity, to any discovery from these defendants, or either of them, or any relief against them, as to the matters contained in said bill; and that any discovery which can be made by these defendants, or either of them, cannot be of any avail to the said complainant for any of the purposes for which a discovery is sought against these defendants by the said bill, nor entitle the complainant to any relief in this court touching any of the matters therein complained of. Wherefore, and for divers other good causes of demurrer appearing in said bill, these defendants do demur to so much thereof as aforesaid, and pray the judgment of this honorable court whether they shall be required to make any other or further answer to the said bill, and pray to be hence dismissed with their reasonable costs in this behalf sustained."

The case being set down for argument, was now argued upon the plea and demurrer by C. S. Davies for defendants, and by W. H. Y. Hackett for plaintiff.

Hackett, for plaintiff, said:

The plaintiff's counsel contend, that the demurrer is insufficient to oust this court of the jurisdiction claimed by the bill, because Carter sues as well in his private, as his official capacity of administrator. The lan-

guage of the bill is "for himself and also in his capacity of administrator, &c." Whether the facts upon which the case depends will or will not substantiate an equitable interest, as well for himself as for his intestate, is a question, which cannot be entered upon, much less settled upon the defendant's demurrer. But this failure of the bill is a conclusive answer to the demurrer. But the facts set out in the bill show Carter to be personally as well as officially interested. He bought the interest in the land in question under a mistake of respondents. Upon the same mistake he sold to his intestate. If that mistake be such as vitiates this sale either as between Carter and the respondents, or as between Adams and the respondents, Carter is alike interested; for he is interested upon his liability over to the estate of Adams for the amount paid to him by Adams, and is interested again in his own right to recover back of respondents the amount paid by him to them. The facts, as laid, then, are sufficient, if sustained by proof, to warrant the proceeding by Carter against respondents, as well in his individual as in his official capacity. He proceeds in both capacities, and he is to recover in either or both, as the equity of the case shall dictate upon proof of all the facts. Carter complains that he personally acted under a mistake in what he transacted with the respondents touching the land while acting in his individual capacity, and that he acted under a like mistake in what he did with them in his official capacity; and that the respondents acted either fraudulently or mistakenly in either instance, so that all of both transactions were void. Such is the nature of the allegations of the bill. Equity alone can remedy these mistakes. Carter is a citizen of a different state from that of which the respondents are citizens. If, as administrator, neither by virtue of the original powers of this court, nor by the local legislature of New Hampshire, this court cannot hold jurisdiction of the case, it will take cognizance of his individual rights and liabilities growing out of this transaction with the defendants, and retain jurisdiction of the bill. It is admitted that Carter is administrator of Adams in the state of Maine. The jurisdiction of this court is derived from the amount in dispute and the citizenship of the parties. Does the capacity in which the plaintiff sues affect the jurisdiction of this court? Does not citizenship confer a privilege independent of local or state legislation, and draw after it as an incident, the capacity in which he may claim to act? If it be not so, how would this case stand on principle, if the plaintiff were administrator of Adams in New Hampshire? He would then be so far naturalized in New Hampshire as to be enabled to sue in their state courts. Looking at the principles and objects on which the jurisdiction of this court rests would there be any violence in holding that he was quoad hoc a citizen of New Hampshire, and therefore under an incapacity to sue in this court? The plaintiff is the legal representative of the intestate, and according to the letter and spirit of the act conferring and defining the jurisdiction of this court, has a right to sue here. But be this as it may, this demurrer is at least premature, for by the statute of New Hampshire (Rev. St. 320) it is provided, that "any person interested in the estate of any person, deceased, may commence an action as administrator thereof, which shall not be abated on the attachment, but by reason that such person is not administrator thereof, nor by his decease, if the administrator then or afterwards appointed shall, at the first or second term of the court, endorse the writ and prosecute the same as plaintiff;" and at the second term of the pendency of this suit there may be such an administrator of Adams as the court will recognize as such. 2 N. Stat. 380.

Davies, for defendants, in reply, said:

The complainant has undertaken to bring this suit in his own behalf, and also in capacity of administrator of Adams. These claims are entirely distinct; and a distinct objection is presented to each by these pleadings. To the claim of the complainant in his own right the defendants have demurred, as exhibiting no case for the equitable interposition of this court. To the claim set up as administrator of Adams the defendants have by plea properly denied that he is administrator. These objections (which were briefly opened before the court, at May, in Portsmouth) are to be separately considered and disposed of.

To follow the order of plaintiff's argument —first, (in regard to the complainant's own alleged right,) on the demurrer.

1. No contract or transaction between the complainant in his right and the defendants, is set forth in the bill, other than the mere purchase of the bond, on June 10th, 1835, for the sum of $5000. In this there was no mutuality on the part of the complainant; he did not engage to purchase the land; he only gave that price for the privilege. That sum was to be allowed towards the payment for the land, if he had purchased under the bond; otherwise it was payment for the bond itself, and for the right of pre-emption, given by it. The complainant sold out eleven sixteenths of his interest to sundry persons, as set forth by him. And a story is carried on in the bill of dealings and negotiations of some of them, or their assigns, with the defendants, with which the complainant, in his own character, has nothing to do. You look in vain for any thing further in regard to him in his own right, or to any remainder, throughout the bill. He shows himself to have had no further concern in the business on his own behalf; is nowise connected with any of the parties in any subsequent proceedings; did not be-

come purchaser of any part of the lands, and ceased to have any interest in the subject. It is not pretended that any mistake or fraud existed in the transaction with Carter, or at that period. Among those persons was Adams. And it is suggested in argument, that the bill may be maintained on account of the complainant's liability to the estate of Adams. No liability is shown. No pretence is made of any mistake then; (the pretended mistake arose afterwards, in the doings of the appraisers or judges.) The complainant may wait till he is called to account, and until the transaction between himself and Adams is rescinded, if it ever could be.

Secondly, as to the plea, "Ne urques administrator."

2. The defendants have pleaded to so much of the bill as relates to the claim of the complainant as administrator of Seth R. Adams, that he is not administrator. By setting down and presenting this plea for argument the allegation is of course admitted; and it is immaterial whether administration has or has not been taken out in another state, as surmised in the argument. Since the complainant has not taken out administration in New Hampshire, he cannot sue there as administrator in the courts of the United States. To this point Story on Conflict of Laws (section 513) and the cases bearing upon it collected, have been already cited. As to the statute provision of New Hampshire referred to, it is not necessary to consider how it would affect the jurisdiction of the courts of the United States, as the complainant has not shown, that he has any such interest in the estate of Adams, as that provision contemplates; or that any construction has been given to it, or can be, that would go to the extent. In short, it is submitted, that the complainant has shown no right or interest, in any respect, upon either point, to maintain the present bill, and that it ought therefore to be dismissed.

STORY, Circuit Justice. The case presented by this voluminous bill may be thus briefly stated. Carter purchased of the defendants and one Henry L. Wiggin seventeen thirty-second parts of a certain township of land, in Maine, viz. seven thirty-second parts of Treadwell, three thirty-second parts of Haven, and seven thirty-second parts of Wiggin; and the vendors covenanted to procure a conveyance of the remaining fifteen thirty-second parts from the other owners to Carter, and who was to pay therefor at the rate of one dollar per thousand feet for all the good merchantable pine timber on the township, to be ascertained by the report of certain persons to be appointed by the vendors, and Carter was to pay in cash a part of the consideration money, and give a bond for the due fulfilment of the other terms of the sale; and the vendors covenanted to perform their part of the agree-

ment, or to pay Carter $55,000. The bond was accordingly executed. The appraisers were appointed and duly made their report, estimating the amount of the timber at 195,850,000 feet of good merchantable pine timber. Carter conveyed to certain persons eleven sixteenth parts of his purchase, and among others to Seth R. Adams, the intestate, one sixteenth thereof; the parties to whom the same were conveyed being the sureties upon his (Carter's) bond. Adams afterwards entered into an agreement with Treadwell and Haven, by which he agreed to pay them for his one sixteenth part of the township at the rate of seven and a half dollars per acre, one fourth part in money, and the residue in three equal annual instalments, and give his notes therefor. This was accordingly done; and Treadwell gave Adams a bond to convey the one sixteenth part of the township upon the full payment of all the instalments. Adams afterwards paid large sums of money to Treadwell and Haven on his notes. Adams afterwards died, leaving his estate insolvent; Carter took administration upon his estate and made a settlement with Treadwell and Haven of their demand, by which he agreed to surrender up to them their bond, and they agreed to surrender to him the notes then held by them against Adams' estate, and their demands were accordingly assigned in favor of Adams' widow.

The bill alleges, that, in point of fact, there was a gross error and mistake in the appraisers in their estimate of the pine timber in the township, there not being half that quantity thereon; that Adams in making and completing his bargain with Treadwell and Haven was not aware of the mistake and error, and, in fact, was induced to make that bargain by the gross deception and misrepresentations of one Scribner, who was acting in confederacy with Treadwell and Haven. The bill further alleges, that Carter, at the time of his settlement with Treadwell and Haven, was not aware of the mistake and error of the appraisers, or of the deception and misrepresentations of Scribner; and it insists that the bargain of Adams, and his own settlement with Treadwell and Haven, ought on these accounts to be set aside and rescinded, and the money paid by Adams recovered back by him as administrator. The bill does not state any case for relief to Carter himself upon his original bargain and purchase. It is under these circumstances, that the plea and demurrer have been put in to the bill. And first as to the plea. It asserts that Carter is not administrator of Adams, as alleged in the bill. In point of fact, Carter has been appointed administrator of Adams, who was a citizen of Maine at his death, by the proper court in Maine; but at the time of filing his bill he had not taken out administration in New Hampshire, where the defendants live, and where the bill is brought, although adminis-

tration has, since the pendency of the bill, been duly obtained by him in New Hampshire.

The first question then is, whether the plea is good; and it having been set down for argument by the plaintiff, he thereby admits it to be true in point of fact, and the only remaining ground for consideration is, whether it is valid in point of law. Upon general principles, there is no doubt that it is valid, unless there is something in the laws of New Hampshire which varies the known rule, that to entitle a party to recover a debt or assert a claim as administrator against a person resident in another state than that where the intestate was domiciled at his death, it is essential that he should have obtained letters of administration in the state where he seeks to recover the debt or to assert the claim. In the present case, there is no difficulty in Carter's maintaining a suit in the circuit court as a citizen of Maine, in his character of administrator of Adams, if he should take letters of administration in New Hampshire. This has been supposed to be fully established ever since the case of Chappedelaine v. Dechenaux, 4 Cranch [8 U. S.] 306; and therefore one inconvenience supposed in the argument at the bar is removed. But it is said that by a recent statute of New Hampshire (Rev. St. N. H. 320) a different rule is prescribed. That statute provides, "that any person interested in the estate of any person deceased, may commence an action as administrator thereof, which shall not be abated, nor the attachment lost by reason, that such person is not administrator thereof, nor by his decease, if the administrator then or afterwards appointed, shall at the first or second term of the court endorse the writ, and prosecute the same as plaintiff." Rev. St. N. H. 1842, p. 320, tit. 19, c. 161, § 10. It is plain from the language of this statute, that it is solely applicable to suits at law, and not applicable to suits in equity. It is as plain, that it is addressed to the state courts, and to the state courts only, and can in no respect be admitted to govern the practice or proceedings in the courts of the United States even in suits at law, unless specially adopted in practice by those courts; and a fortiori it can have no bearing upon the practice and proceedings thereon in suits in equity. It might furnish an analogy by which, possibly, the courts of the United States might seek in a fit case to regulate their own discretion; but it can furnish no rule to govern them. The statute, therefore, does not avoid or surmount the difficulty; and the plea remains, with all its original relevancy and force, as a bar to the suit under existing circumstances.

As to the demurrer to the residue of the bill, viz. that, which respects Carter's claim in his own individual and personal right, it seems to me that it is fully sustained. There are various objections to it, which seem to me strong and decisive. In the first place it seems to me, that the bill is open to the objection of multifariousness in mixing up an independent claim of Carter in his own right with the transactions of Adams with the defendants, with which he had nothing to do, except in his capacity as administrator. What has Carter, individually and personally, to do with the negotiation and arrangement by which as administrator of Adams he surrendered up the bond and cancelled the notes given by Adams to the defendants? The very groundwork of his bill, to which his prayer for relief is directly applied, is to recover and receive back from the defendants the monies paid to them by Adams, which monies, of course, must be recoverable and receivable only in autre droit, as the administrator of Adams. Carter can have no right to mix up his own personal claims on the defendants, if any, in the original purchase of the township with that of Adams under other contracts, and arrangements, subsequently made without any co-operation or connexion with Carter. In the next place, the bill states no case whatsoever for setting aside or cancelling the original contract of purchase with the defendants and Wiggin; and if it did, it would be fatally defective, unless Wiggin were made a party thereto, (which he is not,) or a sufficient ground were shown why he was not or could not be made a party; if indeed in such a case it were practicable to proceed without making him a party; upon which I give no opinion. In the next place, to such a bill, seeking to set aside and cancel the original contract, Scribner and Hanson, and Spaulding, and Pierce, and Littlefield, if not the widow, or heirs of Adams, seem to be necessary parties, and ought not to be dispensed with. In the next place, the bill, for such a purpose, is far too loose and defective, and general in its averments, to make out a case to set aside the original purchase or cancel it. No fraud or intentional misrepresentation is positively or directly alleged on the part of the vendors, or of the appraisers of the pine timber. It is simply and nakedly stated, that the appraisers acted under a mistake of the real amount of the pine timber in the township. But how this mistake occurred, whether it was any thing more than an over estimate made in the exercise of a fair and sound judgment, or whether it was by fraud or circumvention, or imposition or design, is not pointedly put in the bill. The court is left to grope its way in the dark on this, the very gist of the bill, and involving all its merits. Surely it will not be contended, that any mistake, however small, or accidental, or honest on the part of the appraisers, the chosen judges selected by the parties themselves for this very purpose, would justify the court in rescinding the original purchase. That would

be to defeat the very object and intent of the parties in selecting the "good judges" to make the appraisement. For these reasons, and others might be added, it appears to me that the demurrer ought to be allowed.

But the plaintiff asks, in the event that the court should sustain the plea and demurrer, that he may be allowed to amend his bill. From what has been already suggested, it appears to me, that the truest and best course is to have the bill dismissed without prejudice, instead of attempting to amend it in such a manner as to make it efficient. Indeed, two bills will be necessary, if Carter persists in his own individual claim, one for that claim, and one in his capacity as administrator, for the claim of Adams. I think, therefore, that the present bill ought to be dismissed, with costs, but without prejudice to any other bill or bills, which the plaintiff may be advised to bring in this court.